UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MATT UTECHT and KENT DIXON, *Trustees of the Minneapolis Retail Meat Cutters and Food Handlers Pension Plan*,<br><br>Plaintiffs,<br><br>v.<br><br>DIAMOND LAKE, INC.,<br><br>Defendant. | Civil No. 16-118 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Amanda R. Cefalu and Bryan J. Morben, **KUTAK ROCK**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for plaintiffs.

David E. Krause, **DAVID E. KRAUSE LAW OFFICE**, 2716 Colfax Avenue South, Minneapolis, MN 55408, for defendant.

The trustees of the Minneapolis Retail Meat Cutters and Food Handlers Pension Plan ("the Plan") brought this Employee Retirement Income Security Act ("ERISA") case against Diamond Lake, Inc. ("Diamond Lake"), a Minneapolis supermarket that withdrew from the Plan when it went out of business in 2013. The Plan brings this action for collection, alleging that Diamond Lake defaulted on withdrawal liability payments that the Plan properly determined and scheduled under ERISA. Now before the Court is the Plan's Motion for Summary Judgment. The Plan argues that Diamond Lake waived its right to contest liability by failing to demand arbitration within the timeframe required by the statute. Diamond Lake responds that it was not required to do so because the Plan

never completed the determination process. In keeping with the plain language of ERISA, the Court will find that the Plan's failure to respond to Diamond Lake's letter requesting review did not excuse Diamond Lake from the arbitration demand deadline. Diamond Lake also requests equitable relief, which the Court will decline to grant. Because Diamond Lake does not contest the other elements required for the Plan to prevail in this action, the Court will grant the Plan's Motion for Summary Judgment.

## BACKGROUND

The Plan is a multiemployer benefit plan administered in accordance with ERISA. (Compl. ¶ 1, Jan. 19, 2016, Docket No. 1.) Diamond Lake is a Minnesota corporation that operated Sullivan's SuperValu for nearly 30 years until going out of business in 2013. (Decl. of John H. Sullivan, III ("Sullivan Decl.") ¶¶ 1-2, May 18, 2017, Docket No. 37.) When Diamond Lake was in business, it made contributions to the Plan on behalf of employees who were members of United Food & Commercial Workers Union District Local 653. (*Id.* ¶¶ 3, 6). On January 25, 2013, after laying off those employees, it sold its remaining non-cash assets and made its final contributions to the Plan. (*Id.* ¶¶ 4, 6-7.) This was a "complete withdrawal" under ERISA. *See* 29 U.S.C. § 1383(a).

On July 22, 2013, the Plan sent Diamond Lake a letter stating that its withdrawal liability (calculated using the ERISA statutory formula) was $588,361. (Sullivan Decl. ¶ 8; Decl. of David E. Krause ("Krause Decl.") ¶¶ 2-3, Ex. A. at 1, May 18, 2017, Docket No. 38.) The letter explained that Diamond Lake had the right to request review of the Plan's calculations within 90 days, though it was required to begin payment either way.

(Krause Decl. ¶ 2, Ex. A at 2.)  On August 26, Diamond Lake responded with a letter from counsel contending that it was not subject to withdrawal liability because ERISA limits such liability to a percentage of a company's liquidation value, which for Diamond Lake was negative.  (Sullivan Decl. ¶ 10; Krause Decl. ¶ 4, Ex. B at 1-2.)  The letter stated that it was sent "pursuant to 29 U.S.C. § 1399(b)(2)(A)," the statutory provision allowing an employer to request review, identify an inaccuracy, or furnish additional relevant information.  (Krause Decl. ¶¶ 4-5, Ex. B. at 1-2.)  The letter did not explicitly request review, but stated that "Diamond Lake is submitting the information in this letter for the Trustee's consideration in determining whether Diamond Lake has any withdrawal liability to the Plan."  (Krause Decl. ¶ 4, Ex. B. at 1.)  Diamond Lake received no response.  (Krause Decl. ¶¶ 4, 6-7, Ex. B. at 1-2.)

Under the Plan's schedule, Diamond Lake's first payment was due on September 23, 2013.  (Aff. of Bryan J. Morben ("Morben Aff.") ¶ 2, Ex. A at 4-5, Apr. 27, 2017, Docket No. 33.)  Diamond Lake did not make that payment, or any others.  (*Id.* at 5.)  On January 23, 2015, the Plan notified Diamond Lake that it would be in default if it did not cure its failure to pay within 60 days.  (Aff. of Susan Knoblauch ("Knoblauch Aff.") ¶¶ 8-9, Ex. 2 at 1, Apr. 29, 2016, Docket No. 15.)  The Plan filed this action a year later, serving Diamond Lake via the Minnesota Secretary of State.  (Compl.; Summons, Jan. 29, 2016, Docket No. 4.)  Diamond Lake did not respond, and the Clerk entered default.  (Clerk's Entry of Default, Mar. 25, 2016, Docket No. 8.)  When the Plan subsequently moved for default judgment, Diamond Lake filed its Answer, and the entry of default was vacated and set aside.  (Pls.' Mot. Default J., Apr. 29, 2016, Docket No. 11; Ans., May

27, 2016, Docket No. 20; Order, June 1, 2016, Docket No. 21.) Ten months later, the Plan filed the Motion for Summary Judgment that is now before the Court. (Pls.' Mot. Summ. J., Apr. 27, 2017, Docket No. 30.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009).

## II.   WITHDRAWAL LIABILITY

### A. Legal Background

The Employee Retirement Income Security Act ("ERISA") of 1974 "helped assure private-sector workers that they would receive the pensions that their employers had promised them." *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995). But the law's requirement that employers who had withdrawn from an insolvent plan in the five years prior to insolvency pay a fair share of the plan's underfunding perversely incentivized employers to withdraw from financially shaky plans. *Id.* The Multiemployer Pension Plan Amendments Act ("MPPAA") of 1980 sought to fix the problem by requiring employers that withdraw from underfunded multiemployer pension plans to pay withdrawal liability. *Id.* at 415-16.

Under the amended statute, withdrawal liability is created by an employer's partial or complete withdrawal from a multiemployer plan. 29 U.S.C. § 1381(a). Complete withdrawal occurs when an employer permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan. *Id.* § 1383(a). Withdrawal liability is calculated according to a statutory formula that considers the plan's total underfunding, the employer's fair share, certain de minimis reductions, and other limitations on liability. *See id.* §§ 1391, 1389, 1405.

"As soon as practicable" after withdrawal, the plan sponsor is obligated to determine the employer's withdrawal liability, notify the employer of the amount due, provide a payment schedule, and demand payment in accordance with it. *Id.*

§§ 1399(b)(1), 1382.  Within 90 days of receiving this determination, the employer "may ask the plan sponsor to review any specific matter" in the determination and payment schedule, "identify any inaccuracy," and "furnish any additional relevant information to the plan sponsor."  *Id.* § 1399(b)(2)(A).  "After a reasonable review of any matter raised, the plan sponsor shall notify the employer of" its decision, the basis for it, and the reason for any changes.  *Id.* § 1399(b)(2)(B).

In a separate section, the statute provides that disputes between employers and plan sponsors "shall be resolved through arbitration.  Either party may initiate the arbitration proceeding within a 60-day period after the **earlier** of (A) the **date of notification** to the employer under section 1399(b)(2)(B) of this title, **or** (B) **120 days after the date of the employer's request** under section 1399(b)(2)(A) of this title."  *Id.* § 1401(a)(1) (emphases added).  The Eighth Circuit explains:  "Either party may initiate arbitration proceedings within 180 days of an employer's timely request to the plan sponsor for a review of the determination of amount due **or** within 60 days of the plan sponsor's notification to the employer of its decision after such review, **whichever is earlier**."  *Vaughn v. Sexton*, 975 F.2d 498, 501 (8th Cir. 1992) (emphasis added).[1]

If neither party initiates arbitration, the statute provides that the plan sponsor's determination and payment schedule become final and allows the sponsor to bring a state or federal court action for collection.  29 U.S.C. § 1401(b)(1).  Any factual defenses that

---

[1] *Accord Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 901 (7th Cir. 1988) (holding that arbitration commenced more than 180 days after the employer's request for review was barred, even though it commenced within 60 days of the employer's receipt of the plan sponsor's notification in response).

could have been raised in arbitration are waived when the arbitration demand period closes. *Vaughn*, 975 F.2d at 501-02. The strictness of the arbitration demand deadline and severity of the consequences that follow a failure to abide by it are well-known:

> From the perspective of the withdrawing employer, the initial notice of an asserted withdrawal liability should trigger prompt and intensive examination of the background of the plan's collection attempt. **A casual response by a recipient of a withdrawal liability assessment can be disastrous.** . . . The courts are in general agreement in virtually all withdrawal circumstances that an employer's delay in requesting arbitration waives the employer's defenses and right to contest the withdrawal liability.

3 ERISA Practice and Litigation § 12:11 (emphasis added).

Finally, even if an employer contests the plan sponsor's determination, it must pay on the sponsor's schedule unless and until it wins revision. Payment must begin no later than 60 days after the sponsor's demand "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). Timely payments must even be made during arbitration, with adjustments to be made after the fact. *Id.* § 1401(d). If the employer defaults, the plan sponsor may demand immediate payment of the entire amount owed, plus interest. *Id.* § 1399(c)(5).

### B. Application

To prevail in this case, the Plan must show that (1) it was a multiemployer pension plan and that Diamond Lake was an employer for the purposes of ERISA, (2) that Diamond Lake was in the Plan and completely withdrew from it, (3) that the Plan calculated and notified Diamond Lake of its assessed withdrawal liability, (4) that Diamond Lake failed to timely initiate arbitration, and (5) that Diamond Lake defaulted

on its payments. *See* 29 U.S.C. § 1401; *Reed v. Curry Concrete Const., Inc.*, No. 10-4329, 2011 WL 2015217, at *3 (D. Minn. May 23, 2011).

None of these elements are in dispute. The Plan was a multiemployer pension plan and Diamond Lake was an employer under ERISA. Diamond Lake completely withdrew from the Plan. The Plan notified Diamond Lake under Section 1399(b)(1), Diamond Lake sent the Plan a letter "pursuant to Section 1399(b)(2)(A)," the Plan did not respond to that letter, and Diamond Lake did not demand arbitration. The plain language of the statute and the Eighth Circuit's reading of it in *Vaughn* therefore dictate the outcome of this case. An arbitration demand must be made no later than 180 days after an employer's request for review or 60 days after the sponsor's response – whichever comes first. An employer that fails to meet that deadline waives its right to challenge a determination. Diamond Lake failed to meet that deadline; therefore, Diamond Lake waived its right to challenge the Plan's determination and payment schedule.

Diamond Lake creatively contends that the Plan's failure to respond to its letter as required by Section 1399[2] means there was never actually "a determination made under sections 1381 through 1399 of this title," and so the arbitration demand deadline was never triggered in the first place.[3] *Vaughn* suggests Diamond Lake waived this argument. There, an employer's failure to request arbitration foreclosed it from litigating whether a plan sponsor failed to comply with the requirement that it notify the employer "as soon as

---

[2] "After a reasonable review of any matter raised, the plan sponsor **shall** notify the employer" in response. 29 U.S.C. § 1399(b)(2)(B) (emphasis added).

[3] Diamond Lake's case turns on this strained construction of the statute, but it provides no authority in support of its view – and the Court has found none.

practicable" after withdrawal. 975 F.2d at 501-02 (holding that the issue was a factual dispute, not a question of statutory interpretation). Even if the argument is not waived, however, it makes no difference here. Both the plain language of the statute and the Eighth Circuit's decision in *Vaughn* foreclose Diamond Lake's interpretation.

Even if "determination" or "a determination made under sections 1381 through 1399 of this title" were ambiguous, the statute as a whole makes the most sense if they are read to refer to the plan sponsor's initial determination. Section 1381 sets out how a determination is to be made, referring to required calculations in various subsequent sections. Section 1382 requires the plan sponsor to determine the amount of the employer's liability. Section 1399, which allows an employer to request review, uses the phrase "the determination" to mean the initial determination. And both Sections 1399 and 1401 use the phrase to refer to the initial determination unless and until that determination is modified by the plan sponsor or arbitrator.

Likewise, the Eighth Circuit referred to the phrase "a determination made under sections 1381 to 1399" immediately prior to its discussion of Section 1401(a)(1)(A), the "employer's timely request to the plan sponsor for a review of the determination of amount due." *Vaughn*, 975 F.2d at 501. This shows that the Eighth Circuit understands the relevant "determination" to be the plan sponsor's initial determination; a plan sponsor's subsequent response to an employer's request for review is called a "notification." *Id.* And the Eighth Circuit's phrase "whichever is earlier" shows that the notification is only relevant if it comes no more than 120 days after that request. *See id.*

## III. EQUITABLE RELIEF

Diamond Lake asks that the Court preclude the Plan from arguing that the arbitration demand period expired, invoking two "great maxims of equity" – that equity "will not suffer a wrong without a remedy," and that "a party cannot take an unconscionable advantage of its wrong by asserting its strict legal rights." (Def.'s Mem. Opp. Mot. Summ. J. at 7-8, May 18, 2017, Docket No. 36.) Specifically, Diamond Lake contends that the Plan's determination letter represented that it would respond to any submission from Diamond Lake, and that the Plan's failure to do so therefore reversed the Plan's own previous position and violated the law.[4]

Equitable estoppel prohibits "a party who has full knowledge of the facts from accepting the benefits of a transaction, contract, or order and subsequently taking an inconsistent position to avoid corresponding obligations." *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987). For example, one out-of-circuit district court applied the doctrine when a plan sponsor acted in a manner "that was intentionally misleading and in bad faith." *Central States, Se. and Sw. Areas Pension Fund v. Premarc Corp.*, 1994 WL 457170, at *3-*4 (N.D. Ill. Aug. 22, 1994) (finding that ignoring an employer's timely letter following up on its request for review "constituted active concealment").

Diamond Lake's claim that the Plan acted in bad faith by "representing . . . that they would act on" any objections is unpersuasive. First, the Plan's letter contains no

---

[4] This Section assumes without deciding that this argument raises a question of law that was not waived by Diamond Lake's failure to arbitrate.

clear statement to that effect. Second, the Plan's letter explained that ERISA required Diamond Lake to make timely payments regardless of whether it requested review, and Diamond Lake failed to do so – undermining the claim that it was acting in reliance on representations in the letter. Finally, because Diamond Lake never followed up, the Plan cannot be said to have taken measures constituting "active concealment." Equitable estoppel is not justified here.

Equitable tolling may protect a litigant who establishes both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016). While no Eighth Circuit cases are directly on point, decisions in other circuits are instructive. The Seventh Circuit affirmed a district court's application of equitable tolling when an employer had "moved decisively to present the issue in court," rather than to an arbitrator, "within the statutory time period for arbitration."[5] *Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 875 F.2d 1285, 1293-94 (7th Cir. 1989). Citing *Banner Industries*, the Second Circuit found that an employer "did not protect its right to arbitration by moving decisively" when it answered a complaint in federal court promptly, but "did not move for a stay pending arbitration" or make payments pending resolution of the dispute. *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264-65 (2d Cir. 1990).

---

[5] This conclusion is not self-evident. The Fourth Circuit flatly held that "[t]he doctrine of equitable tolling is inapplicable in MPPAA cases" because it "undercuts the purpose of the statute, the timely adjudication of withdrawal liability disputes to insure the security of multiemployer plans." *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1065 (4th Cir. 1991).

District courts have denied equitable tolling even in cases where a plan sponsor asked an employer for additional documents to review shortly before the arbitration demand deadline expired or represented to the employer that it might decrease an assessment. *Pension Plan for Pension Tr. Fund for Operating Eng'rs. v. Weldway Const., Inc.*, 920 F. Supp. 2d 1034, 1046-47 (N.D. Cal. 2013); *Trustees of Soft Drink Indus.-Local Union No. 744 Pension Fund v. Royal Crown Bottling Co.*, No. 08-C-502, 2009 WL 310896, at *3 (N.D. Ill. Feb. 9, 2009). "Defendants are presumed to be aware of the law." *Weldway Const.*, 920 F. Supp. 2d at 1047.

Here, Diamond Lake does not make out a prima facie case for tolling the statute of limitations because it does not allege extraordinary circumstances.[6] Nor may it be said that Diamond Lake moved decisively toward arbitration. The sole action it took to pursue its rights was to write the Plan a letter. Although the letter requested a response, Diamond Lake never followed up on that request. Indeed, it did nothing at all for over two years – it did not even file an answer in this action until the Plan filed for default judgment. Equitable tolling is not justified here.

The Court will grant the Plan's Motion for Summary Judgment.

## IV.   LIABILITY

The final remaining issue is that of Diamond Lake's total liability. The Plan requests $588,361 in withdrawal liability, $64,679.86 in accrued interest, $58,836.10 in

---

[6] *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir. 1992) (suggesting that tolling might be justified if an employer's sole shareholder suffered "a disabling stroke the day the pension plan gave notice").

liquidated damages, and $16,987.29 in costs and fees, for a total of $728,864.25. (Pls.' Mem. Supp. Mot. Summ. J. ("Supp.") at 9-11, Apr. 27, 2017, Docket No. 32.)

The civil enforcement section of the MPPAA statute mandates that "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b). The ERISA section on civil enforcement of delinquent contributions provides that, in an action "in which a judgment in favor of the plan is awarded, the court shall award the plan" the unpaid contributions, interest, liquidated damages not in excess of 20 percent, and reasonable attorney's fees and costs. *Id.* § 1132(g)(2). It further provides that interest "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." *Id.* 1132(g). Here, the Plan Agreement set liquidated damages at 10%, interest on missed payments at 8% per annum, and requires delinquent employers to "pay all court costs including reasonable attorney fees."[7] (Knoblauch Aff. ¶ 11, Ex. 3, § 4.5.)

The Plan's withdrawal liability figure matches the Plan's original determination, and does not include amortized interest. (*See* Knoblauch Aff. ¶ 5, Ex. 1, at 1.) The Plan Agreement set liquidated damages at 10%. (*Id.* ¶ 11, Ex. 3, § 4.5.) The Court finds that the Plan's withdrawal liability and liquidated damages requests are appropriate.

---

[7] Section 4.5 of the Plan Agreement regards "Contributions to the Trust Fund," but again, under Section 1451(b), an employer's failure to make withdrawal liability payments is to be treated in the same manner as a delinquent contribution. *See GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, No. 216-CV-100, 2017 WL 1903102, at *5 (C.D. Cal. May 8, 2017).

With regard to interest, the Plan submits that interest on overdue and defaulted withdrawal liability is calculated from the first day of the plan year following withdrawal (citing *Schlitz Brewing*, 513 U.S. at 431) in accordance with the standard rates in Pension Benefit Guaranty Corporation ("PBGC") regulations (citing 29 C.F.R. § 4219.32). The Plan's request appears to be calculated based on the law for interest payments prior to default or enforcement action. *See* 29 U.S.C. §§ 1399(c)(1)(A)(i), (c)(6). In light of Diamond Lake's default, however, the Plan is entitled to interest calculated "from the due date of the first payment which was not timely made."[8] *Id.* § 1399(c)(5); *see also* 29 C.F.R. § 4219.32(d). And, in light of the fact that this Court will award judgment for the Plan, it is entitled to the plan-provided rate of 8% per annum. 29 U.S.C. § 1132(g)(2).[9] As such, the Court calculates Diamond Lake's interest obligation from September 23, 2013, to the date of judgment as $188,275.52.[10]

---

[8] Section 1132(g) does not designate the point from which interest should be charged.

[9] The Court acknowledges that district courts differ on whether civil actions are governed by 29 U.S.C. § 1132(g)(2) or by 29 U.S.C. § 1399(c)(6) and 29 C.F.R. § 4219.32(b). The Court will join those concluding that it is the former. *Quad/Graphics, Inc.*, 2017 WL 1903102, at *6 (collecting cases and concluding that the latter "applies only where overdue withdrawal payments are collected before litigation commences"); *Trustees of Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.*, No. 13CV198, 2017 WL 972104, at *1 n.2 (E.D.N.Y. Mar. 13, 2017) (collecting cases and concluding the opposite). In this case, it might not make any difference. *See* 29 C.F.R. § 4219.32(b) (establishing rates "[e]xcept as otherwise provided in rules adopted by the plan pursuant to § 4219.33"); *id.* § 4219.1 (explaining that Subpart C, which includes Sections 4219.31-33, establishes a rule for employers who have defaulted under § 1399(c)(6), but also authorizes plans to adopt alternative rules). Because the Court concludes that 29 U.S.C. § 1132(g)(2) controls here, it need not determine whether Section 4.5 of the Plan Agreement was adopted "pursuant to § 4219.33."

[10] The Court awards four years of simple interest rather than compound interest in recognition of the fact that this award is significantly higher than the Plan's request.

To determine reasonable attorneys' fees, a court starts with the lodestar: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*; *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). With regard to hourly rates, "[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). "[D]istrict courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). A district court has "broad discretion" in awarding attorneys' fees. *Id.*

Here, the Plan submitted an affidavit from counsel laying out the law firm's services, hours, fees, and costs. (Morben Aff. ¶¶ 6-9.) The firm's services are described generally, and include review of the files, drafting and serving the summons and complaint, application for entry of default and motion for entry of default judgment, work with the magistrate judge, discovery efforts, and drafting and arguing the motion for summary judgment. (*Id.* ¶ 6.) The firm's billable hours are not broken out by task, but they consist of 38 associate hours billed at $185 per hour, 23 partner hours billed at $325 per hour, 2.5 partner hours billed at $385 per hour, and 4.5 paralegal hours billed at $160 per hour. (*Id.* ¶ 7.) Costs total $799.79. (*Id.* ¶ 9.) Diamond Lake has not contested these estimates, but neither are the firm's services or hours documented in detail. Although the Court finds that the hourly rates and the number of hours expended are reasonable for this type of case in the Twin Cities metropolitan area, it will reduce the hours claimed by 25%

to account for inadequate documentation. The Court further finds that the requested costs and expenses are reasonable. Based on these submissions, the Court will grant an award of $12,140.63 in attorneys' fees and $799.79 in costs.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for Summary Judgment [Docket No. 30] is **GRANTED**.

2. Defendant shall pay Plaintiffs $588,361 in withdrawal liability, $188,275.52 in accrued interest, and $58,836.10 in liquidated damages.

3. Defendant shall pay Plaintiffs' attorneys' fees in the amount of $12,140.63, plus costs of $799.79.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 29, 2017  
at Minneapolis, Minnesota.

_____s/John R. Tunheim_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court